UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 19-CV-07254
(DLI) (RER)

_____

THE TRUSTEES OF THE SOFT DRINK & BREWERY WORKERS UNION, LOCAL 812 RETIREMENT FUND AND THE SOFT DRINK & BREWERY WORKERS UNION, LOCAL 812 RETIREMENT FUND,

Plaintiffs,

VS

TRIBECA BEVERAGE, INC. AND TOMPKINS SQUARE DISTRIBUTORS, INC.,

Defendants.

_____

**REPORT & RECOMMENDATION**

December 21, 2020

_____

**to the Honorable Dora Lizette Irizarry,
Senior United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

The Soft Drink & Brewery Workers Union, Local 812 Retirement Fund ("the Fund") and the Fund's Trustees ("the Trustees") (collectively, "Plaintiffs") bring this motion for default judgment against Tribeca Beverages, Inc. ("Tribeca") and Tompkins Square Distributors, Inc. ("Tompkins") (collectively, "the Companies" or "Defendants") under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1381 through 1405 and 1451. (Dkt. No. 1 ("Compl.") ¶ 1). Plaintiffs seek to hold Defendants jointly and severally liable and request damages consisting of unpaid withdrawal liability, interest, liquidated damages, attorney's fees and costs. (Compl. at 6–7).

For the reasons discussed herein, I respectfully recommend that Plaintiffs' motion for default judgment be granted and Plaintiffs be awarded total damages in the amount of $843,700.89. This amount includes from Tribeca: (1) $202,437 in delinquent contributions, (2) $18,219.33 in interest, (3) $40,487.40 in liquidated damages, (4) $4,180 in attorney's fees, and

1

(5) $200 in costs; from Tompkins: (1) $444,804 in delinquent contributions, (2) $40,032.36 in interest, (3) $88,960.80 in liquidated damages, (4) $4,180 in attorney's fees, and (5) $200 in costs.

## BACKGROUND

### I.    The Agreement

The Fund is a multiemployer plan,[1] maintained and governed by ERISA. (Dkt. No. 13-5 ("Ex. d") §§ 1.2, 2.1). The Fund is comprised of assets from all employer contributions under the Collective Bargaining Agreement ("CBA"). (*Id.* § 1.1). Employers of the Fund are obligated to comply with the Agreement and Declaration of Trust and other policies and procedures of the Fund. (Dkt. No. 13-2 ("Ex. a"), art. 28(4)). All employer contributions are further enforced by the Statement of Policy for Collection of Employer Contributions ("Collection Policy"). (Dkt. No. 13-10 ("Ex. h") at 1).

### II.    Events Leading to Default on Withdrawal Liability

As employers subject to the Fund, both Tribeca and Tompkins were obligated to contribute to the Fund at all relevant times. (Dkt. No. 31-1 ("Stone Aff.") ¶ 10; *see* Ex. a at 41; Ex. d, art. VI). Tribeca and Tompkins permanently ceased their obligations to contribute in August and October of 2018, respectively. (Compl. ¶¶ 12–13). Plaintiffs sent a notice and demand for withdrawal liability ("withdrawal notices") to each

Company on May 16, 2019.[2] (Dkt No. 13-6 ("Ex. e-1") at 1; Dkt. No. 13-7 ("Ex. e-2")) at 1). The notices included actuary assessments of the withdrawal liability amount owed by each Defendant and corresponding payment schedules. (*Id.*). The withdrawal notices demanded the first payments by July 15, 2019. (*Id.*). The Companies failed to make the payments by the deadline, (Stone Aff. ¶ 20), and on August 12, 2019 jointly requested a review of the withdrawal liability assessments, (*Id.* ¶ 21).

On August 20, 2019, the Fund sent a default notice the Companies' alleged president, Herbert Hagemann ("Hagemann"), notifying him of their failure to make the first payment. (Dkt. No. 13-8 ("Ex. f")). This notice further informed the Companies that failure to cure non-payment within sixty days of receipt of the notice would result in a default which would incur additional interest, liquidated damages, and the costs of collection. (*Id.* at 2). After reviewing the Companies' August 12th request for review, on September 2, 2019[3] the Fund responded that "the Companies had provided no basis to revise [the Fund's] withdrawal liabilities." (Stone Aff. ¶¶ 23–24).

### III.    Events Leading to Motion for Default Judgment

The Fund brought suit against the Companies on December 27, 2019, at which point they had not cured the failure of payment or initiated arbitration.

---

[1] The term "multiemployer plan" is defined as a plan
    (i) to which more than one employer is required to contribute,
    (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and
    (iii) which satisfies such other requirements as the Secretary may prescribe by regulation.

§ 1002(37)(A).

[2] The Court notes that each letter was sent to the same individual – Herbert Hagemann – at the same address.

[3] According to the Complaint, the letter was sent on September 4, 2019. (Compl. ¶ 22). However, this factual discrepancy is immaterial.

(Compl. ¶ 31). The Companies executed Plaintiffs' requests for waivers of service of summons served on January 3, 2020. (Dkt. Nos. 9-2, 10-2). When the Companies failed to answer or otherwise respond to the complaint by March 3, 2020, sixty days after the request of service of summons, the Clerk of the Court entered default against them. (Dkt. Nos. 11, 12).

Plaintiffs subsequently moved for default judgment on April 24, 2020. (Dkt. No. 13 ("Pls.' Mot.")). The Companies had not made any withdrawal liabilities payments when the Fund moved for default judgment. (Stone Aff. ¶ 30). The Fund requests $202,437 from Tribeca and $444,804 from Tompkins for withdrawal liability, jointly and severally, in addition to interest, liquidated damages, legal costs, and attorney's fees. (Dkt. No. 13-14 (Pls.' Mem.") at 1–2; Compl. at 6–7). Your Honor referred the motion to me for a report and recommendation. (Order dated 4/27/2020).

## DISCUSSION

### I.   Standard of Review for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure provides a two-step analysis for default judgment motions. *Gesualdi v. Seacoast Petrol.*, 97 F. Supp. 3d 87, 95 (E.D.N.Y. 2015). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." FED. R. CIV. P. 55(a). A party that waives service of summons must respond to the complaint within sixty days from the date the request of waiver was sent. FED. R. CIV. P. 4(D)(3).

Following entry of default, a party must apply for default judgment. FED. R. CIV. P. 55(B). To be granted such

relief, the requesting party must establish the defaulting party's liability as a matter of law. *Div. 1181 Amalgamated Transit Union— N.Y. Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 611 (E.D.N.Y. 2017) ("[C]onclusory allegations, without more, are insufficient to establish liability."); *Bricklayers & Allied Craftworkers Local 2, Albany Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). In general, a party's default is accepted as admission of all well-pleaded allegations of liability. *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 611.

Here, Defendants executed waiver of service of summons on January 17, 2020. (Dkt. Nos. 9-2, 10-2). However, they failed to "plead or otherwise defend" by the sixty-day deadline of March 3, 2020. (Stone Aff. ¶ 7). I find that the Clerk properly entered default against Defendants in accordance with Rule 55(a). (*See* Dkt. Nos. 11, 12).

Pursuant to Rule 55(b), Plaintiffs subsequently moved for default judgment against Defendants. (Pls.' Mot.). Upon careful review of the facts, as analyzed below, I find that Plaintiffs have established Defendants' liability as a matter of law under ERISA. Therefore, I respectfully recommend that Plaintiffs' motion for default judgment be granted and damages be awarded as described below.

### II.   ERISA Liability

A.  Withdrawal Liability

ERISA imposes withdrawal liability on employers withdrawing from multiemployer plans to "protect any future benefits that may have vested for employees." *D & A Bus Co.*, 270 F. Supp. 3d at 606 (quoting *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 5 (E.D.N.Y. 2001)); *I.L.G.W.U. Nat'l Ret. Fund v. Levy*

3

*Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d. Cir. 1988). A complete withdrawal occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

ERISA lays out procedural requirements for collection of withdrawal liability. First, the plan must notify the withdrawing employer of the liability amount and demand payment according to a payment schedule. § 1399(b). The employer shall make the payment according to the schedule, beginning no later than sixty days after the demand was sent. § 1399(c)(2).

The employer may also request to review the liability assessment within ninety days of the receipt of the demand. § 1399(b)(2)(A). The plan sponsor shall then review the request and respond with a determination including the basis for such determination. § 1399(b)(2)(B). The employer can also initiate arbitration within sixty days after the earlier of (a) the sponsor's determination or (b) 120 days after the employer's request for review. § 1401(a). However, this request for review does not relieve the employers from the statutory obligation to make payments in accordance with the schedule set forth in the demand. § 1399(c)(2).

If the employer fails to make the first payment on schedule, the plan sponsor must notify the employer of this failure and of the possibility of default. *See* § 1399(c)(5)(A); *Daniello v. Planned Sys. Integration Ltd.*, No. 07-CV-1729 (RRM) (VVP), 2009 U.S. Dist. LEXIS 132835, at *3 (E.D.N.Y. June 25, 2009), *R & R adopted by* 2009 WL 2160536 (July 17, 2009). An employer defaults when "the failure [to make the payment] is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure."

§ 1399(c)(5); (*see also* Dkt. No. 13-9 ("Ex. g") § 17.4(d)).

Here, Tribeca and Tompkins, as employers of the Fund, had the duty to contribute to the Fund at all relevant times. (Stone Aff. ¶ 10; *see* Ex. a, art. 28. Defendants ceased all obligations to contribute to the Fund in 2018, (Compl. ¶¶ 12–13), effectuating complete withdrawal, *see* § 1383(a). Pursuant to ERISA, the Fund sent Tribeca and Tompkins each a withdrawal notice on May 16, 2019. (Exs. e-1, e-2). Included in the withdrawal notices were the amounts of withdrawal liability, actuary reports, and payment schedules, which demanded the first payment by July 15, 2019. (*Id.*).

The Companies failed to make the first payment by the deadline. (Stone Aff. ¶ 20). The only action Defendants took was to timely request review of the withdrawal liability amount on August 12, 2019. (Stone Aff. ¶ 21). However, this request did not relieve them of their statutory obligation to make the payments by July 15, 2019. *See* § 1399(c)(2).

The Fund sent Defendants a joint notice of default on August 20, 2019. (Stone Aff. ¶ 22). This notice explained that if the Companies did not cure the failure of payment within sixty days of receipt, the Companies would default and incur additional interest, liquidated damages, attorneys' fees and other legal costs. (Ex. f at 2). Although the records do not show when Defendants received the default notice, the Court reasonably assumes that the notice was received shortly after the date it was sent. The Fund brought suit against the employers for defaulting on their payment on December 27, 2019, well passed sixty days after the Companies received the default notice. *See* § 1399(c)(5); (Compl. ¶ 31; *see also* Ex. f).

4

Furthermore, upon review of Defendants' request to review the withdrawal liability, the Fund determined that Defendants did not provide any basis to revise the assessments. (Stone Aff. ¶ 23). Plaintiffs notified Defendants of their determination on September 2, 2019. (*Id.* ¶ 24). Defendants did not initiate arbitration. (*Id.* ¶ 25). Upon careful review of the facts, I find that Defendants have failed to meet their statutory obligations and thus are liable as a matter of law under ERISA. I respectfully recommend that the Court enter default judgment against both Defendants.

### B.  Joint and Several Liability

"[A]ll employees of trades or businesses . . . which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." § 1301(b)(1). Therefore, "each member of a commonly controlled group of trades or businesses is liable for the withdrawal liability of any other member of that group." *I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc.*, No. 92 CIV. 0597 (PKL), 2002 WL 999303, at \*1 (S.D.N.Y. May 15, 2002), *aff'd sub nom. I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc.*, 94 F. App'x 850 (2d Cir. 2003).

To establish that employers are under common control, plaintiffs must prove that the defendants are "members of a 'parent-subsidiary' or 'brother-sister' group of businesses." *See Trs. of Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, No. 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at \*8 (E.D.N.Y. Aug. 2, 2019), *R & R adopted by* 2019 WL 3936676 (Aug. 20, 2019) (refusing to hold defendants jointly and severally liable because plaintiffs failed to provide sufficient facts to support their common control claim); *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 610 (finding that simply

stating that the defaulting defendants are under common control was insufficient for purposes of joint and several liability); *but see Trs. of United Teamster Fund v. Phoenix Lab'ys, Inc.*, No. 08-CV-4926 (JS) (ETB), 2010 WL 1267783, at \*4 (E.D.N.Y. Mar. 4, 2010) (deeming true the plaintiffs' conclusory allegation that corporate defendants were under "common control"), *R & R adopted by* 2010 WL 1268088 (Mar. 29, 2010).

Plaintiffs must specifically establish that employers, as members of parent-subsidiary or brother-sister group, have a "controlling interest." *ESI Grp.*, 2002 WL 999303, at \*5–\*6 (citing 26 C.F.R. § 1.414(c)–2(c)). To determine whether an employer has a controlling interest, "[c]apital ownership is the test." RONALD J. COOKE, 3 ERISA PRACTICE AND PROCEDURE § 7:80 (2020); *compare UFCW Local 174 Pension Fund v. Int'l Glatt Kosher Meat Processing Corp.*, No. 17-CV-5790 (RJD) (LB), 2018 WL 3742731, at \*4 (E.D.N.Y. May 15, 2018) (not finding common control when the same person was the owner of Company A, the president and owner of Company B, and a corporate officer and owner of Company C), *R & R adopted by* 2018 WL 3435059 (July 13, 2018), *with Ferrara v. Happy Time Trucking, LLC*, 436 F. Supp. 3d 606, 617 (E.D.N.Y. 2020) (finding two defendant companies under common control when the same brothers owned 100% of Company A, 52% of Company B, and 100% of actual voting rights of Company B), *and Gesualdi v. Nacirema Indus. Inc.*, No. 16-CV-4159 (DRH) (ARL), 2017 WL 9487171, at \*4 (E.D.N.Y. Aug. 31, 2017) (finding the plaintiffs' allegations sufficient to establish common control when the same two people "owned all the equity and have had the controlling interest," and were in "effective control" of each defendant corporation), *R &R adopted by* 2017 WL 4326049 (Sept. 28, 2017).

5

Plaintiffs claim that Tribeca and Tompkins are under common control and, therefore, should be jointly and severally liable. (Compl. ¶¶ 35, 39; Pls.' Mem. at 1). However, apart from the conclusory claim, Plaintiffs have not provided any proof of Defendants' capital ownership in the Companies to establish their "controlling interest." It is true that all notices and letters were sent to the same address and recipient, Hagemann, the alleged president of both Companies. (*See* Ex. f at 1; Stone Aff. ¶¶ 3, 4). The Court notes that although Hagemann also executed the waiver of service for both Companies, (Dkt. Nos. 7, 8), two different individuals signed the CBA for each Defendant Company, (Ex. a at 41). The Fund manager likewise does not allege in her affirmation that the Companies are under common control. (*See* Stone Aff.).

Our case law demands more. Therefore, without more proof from Plaintiffs, the Court cannot conclude that Defendants are under common control. I therefore respectfully recommend the Court deny Plaintiffs' request for joint and several liability.

## III.   Damages

Where "a judgment in favor of the plan is awarded, the court shall award the plan" the unpaid contribution in addition to interest, an amount equal to the greater of interest or liquidated damages, reasonable legal costs, and attorney's fees. § 1132(g)(2);[4] (*see also* Ex. g § 17.4 (d)–(e)). However, a judgment of liability does not automatically entail award of damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Instead, the court must make an individual assessment. *Planned Sys.*

*Integration*, 2009 U.S. Dist. LEXIS 132835, at *8.

The court has discretion to award damages after a hearing or based on submitted records. *See* FED. R. CIV. P. 55(b)(2); *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.,* 699 F.3d 230, 234 (2d Cir. 2012). The submitted records must allow the court to determine the amount of damages to a "reasonable certainty." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (citing *Credit Lyonnais Secs. Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)) (finding two declarations, a copy of the collective bargaining agreement, a letter of assent from the defendant, tabulation of liabilities due from defendant, and documentation of attorney's fees and costs a sufficient basis to determine damages). Plaintiffs submitted the following documents in support of damages: (1) CBA and extension agreements, (2) Agreement and Declaration of Trust and its amendments, (3) withdrawal notices, (4) Collection Policy, (5) default notice, and (6) statements supporting attorneys' fees and legal costs. Having reviewed the detailed affidavits submitted by Plaintiffs, I find these documents provide a sufficient basis upon which to determine damages to a reasonable certainty.

Plaintiffs request total damages in the amount of $845,790.89 consisting of withdrawal liability, liquidated damages, and interest. (Pls.' Mem. at 11). Table 1 breaks down requested damages from each Defendant, excluding $10,450 for attorney's fees and $400 for costs.[5] (Stone Aff. ¶ 47). I now turn to each of these requested damages.

---

[4] An employer who defaults on a withdrawal liability payment is treated the same as a delinquent contributor. § 1451(b).

[5] Table 1. Tabulation of damages sought by Plaintiffs from each Defendant, jointly and severally. (Pls.' Mem. at 11; Stone Aff. ¶¶ 14, 16, 37, 38, 42, 45).

A.  Withdrawal Liability

An employer that fails to initiate arbitration waives its right to contest the withdrawal liability amount or to raise any defenses, and the requested amount becomes final. § 1401(b)(1); *see Bd. of Trs. of the Priv. Sanitation Union Local 813 Pension Fund v. Metro Demolition Contracting Corp.*, No. 10-CV-00195 (DLI) (RER), 2010 WL 5621275, at *3 (E.D.N.Y. Sept. 17, 2010) ("Although Plaintiffs did not submit any supporting documentation detailing how they arrived at [the total withdrawal liability], they were under no requirement to do so since Defendants' failure to initiate arbitration made the amount demanded by the Fund 'owing as a matter of law.'"), *R & R adopted by* 2011 WL 197588 (Jan. 20, 2011); *Labarbera v. United Crane & Rigging Servs., Inc.*, No. 08-CV-3274 (DLI) (ALC), 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) ("The law is unforgiving where, as here, an employer fails to take action in a timely manner after being notified."), *adopting in part* 2010 U.S. Dist. LEXIS 141765 (Sept. 10, 2010); *Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, No. 06-CV-3543 (ERK) (AKT), 2008 WL 4426875, at *6 (E.D.N.Y. Sept. 4, 2008) ("[A] federal court will not make an independent determination that the plan sponsor's assessment was unreasonable."), *R & R adopted* (order dated 7/1/2009).

However, the court can award requested withdrawal liability only if supporting documents submitted by the fund are free of errors or inconsistencies in calculations. *See Cent. Fur Storage Co.*, 2019 WL 3937132, at *9 (denying the amount requested by a plaintiff because the plaintiff (1) included interests in the principal used to

calculate withdrawal liability and (2) failed to identify what had already been paid by the defendant); *see Trs. of the Local 7 Tile Indus. Welfare Fund v. EAQ Constr. Corp.*, 2015 U.S. Dist. LEXIS 135002, at *25 (E.D.N.Y. Aug. 24, 2015) (declining to award requested amount to a plaintiff who submitted reports that included contributions owed to a party other than the named plaintiff), *R & R adopted by* 2015 WL 5793597 (Sept. 30, 2015).

Defendants failed to contest the withdrawal liability not only once by not answering the Complaint but twice by failing to initiate arbitration within the November 2, 2019 statutory deadline. (Stone Aff. ¶ 25; *see* § 1401(a)). Therefore, Plaintiffs are entitled to their requested withdrawal liability amount so long the records show calculations free of discrepancies. Upon careful review of the records and the detailed actuary assessment, the Court finds that Plaintiffs' submissions are free of error or inconsistencies. (*See* Exs. e-1, e-2; Dkt. No. 13-15). Therefore, I respectfully recommend that Plaintiffs be awarded withdrawal liability as requested in the amount of $202,437 and $444,804 from Tribeca and Tompkins, respectively. (*See* Pls.' Mem. at 11).

B.  Interest

ERISA mandates that interest on unpaid contributions be calculated by the rate provided under the plan, if it exists. § 1132(g)(2). The Collection Policy provides: "All late-paid contributions that are outstanding for more than 180 days will be charged interest from the Due Date to the date of payment at an annual rate of 18%. Interest

| | Withdrawal Liability | Interest | Liquidated Damages |
|---|---|---|---|
| **Tribeca** | $202,437 | $18,219.33 | $40,487.40 |
| **Tompkins** | $444,804 | $40,032.36 | $88,960.80 |

shall continue to accrue on all delinquent amounts *until full payment is received*." (Ex. h § V(1) (emphasis added)).

Defendants became liable for the entire withdrawal liability around October 2019, sixty days after Defendants received the default notice.[6] *See* § 1399(c)(5); (Ex. f). Since Defendants had not made the payment before Plaintiffs moved for default judgment on April 24, 2020, the payment was more than 180 days overdue. Therefore, the interest on the unpaid amount accrues at eighteen percent per annum, or 1.5% per

month.[7] Plaintiffs calculated the accrued interest over six months from October 20, 2019 to April 30, 2020.[8] (Stone Aff. ¶¶ 37, 38). They did not request accrued interest until the date of payment.[9] (*See id.*). According to Plaintiffs' calculation, Tribeca owes $18,219.33, and Tompkins owes $40,032.36.[10] I find no error in Plaintiffs' calculations.[11] Therefore, I respectfully recommend that Plaintiffs be awarded the requested amount in interest.

---

[6] The Court assumes that Defendants received the default notice within eight days of Plaintiffs mailing it on August 20, 2019.

[7] 0.18/year X 1 year/12 months = 0.015/month.

[8] As noted before, although the exact date Defendants received the notice is unclear from the records, the Court presumes that it was received within eight days of August 20, 2019. For the purpose of calculating number of *months* the payment was overdue from the day withdrawal liability became due, Plaintiffs' calculation is reasonable.

[9] Plaintiffs request interests accrued during the six months leading up to Plaintiffs' motion for default judgment. Although "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," FED. R. CIV. P. 54(c), a court may award damages that accrued during the pendency of a litigation, if the defendant was put on notice that such damages may accrue, *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment,' [Fed. R. Civ. P. 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer."). However, defendants must be clearly on notice. *See Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Local 14-14B v. Angel Const. Grp., LLC*, No. 08-CV-4760 (SJ) (JO), 2009 WL 6047130, at *9 (E.D.N.Y. Sept. 8, 2009), *supplemented*, 2010 WL 932365 (E.D.N.Y. Feb. 18, 2010) (denying additional interests on a default judgment when plaintiffs served defendants a statement of damages with the motion for default

judgment that only requested the same amount as the complaint even though plaintiffs had provided in the complaint that they might seek more damages than the amount requested in the complaint), *R &R adopted by* 2010 WL 932337 (Mar. 11, 2010).

Plaintiffs notified Defendants that in the case of default in payment, Defendants will be liable for interest. (Ex. f at 2). The Collection Policy explicitly says that the interest will accrue "until full payment is received." (Ex. h § V(1)). However, I cannot recommend such an award of damages because Plaintiffs did not request increased interest on the motion for default judgment, (Stone Aff. ¶¶ 37, 38), or the statement of damages, (Dkt. No. 13-15). The Collection Policy was not mentioned in the default notice, (*see* Ex. f), or in the Complaint, (*see* Compl.). Because Defendants "declined to contest the plaintiffs' request for damages in reliance on that information," it would be unfair to award Plaintiffs additional interests. *See Angel Const.*, 2009 WL 6047130, at *9.

[10] Tribeca = $202,437 X .015/month X 6 months = $18,219.33. Tompkins = $444,804 X .015/month X 6 months = $40,032.36

[11] Courts use daily interest rates as a more accurate assessment of liability. *See D & A Bus Co., Inc.*, 270 F. Supp. 3d at 615; *Cent. Fur Storage Co.*, 2019 WL 3937132, at *10. Daily interest rates would be $99.83 per day for Tribeca and $219.36 per day for Tompkins. (Tribeca = ($202,437 X .18) / 365 = $99.83; Tompkins = ($444,804 X .18) / 365 = $219.36). Even though Plaintiffs could have been awarded more using the per diem rates, because the rate is "different in kind" from the one requested, the Court cannot recommend such award. *See* FED. R. CIV. P. 54(c).

## C.  Liquidated Damages

Both ERISA and the parties' agreement award liquidated damages in the amount of (1) the interest charged on the withdrawal liability, or (2) twenty percent of the withdrawal liability, whichever is greater. § 1132(g)(2); (Ex. g § 17.4(e)). Twenty percent of the unpaid contribution for Tribeca and Tompkins are $40,487.40 and $88,960.80, respectively.[12] Because these figures are greater than interests awarded above, I respectfully recommend that Plaintiffs be awarded liquidated damages of $40,487.40 and $88,960.80 from Tribeca and Tompkins, respectively.

## D.  Attorney's Fees

ERISA further obligates a delinquent employer to pay "reasonable attorney's fees and costs of the action." § 1132(g)(2). A reasonable attorney's fee is "what a reasonable, paying client would be willing to pay." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany,* 522 F.3d 182, 190 (2d Cir. 2008); *Pinzon v. Paul Lent Mech. Sys., Inc.*, No. 11-CV-3384 (DRH) (WDW), 2012 WL 4174725, at *5 (E.D.N.Y. Aug. 21, 2012), *R & R adopted by* 2012 WL 4174410 (Sept. 19, 2012). A reasonable fee is calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on the tasks completed. *Pinzon*, 2012 WL 4174725, at *5. The requesting party has the burden to demonstrate the reasonableness of the charged hourly rates and hours spent. *Trs. of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc.*, No. 18-CV-1471 (CBA) (CLP), 2020 WL 1172635, at *11 (E.D.N.Y. Feb. 20, 2020), *R & R adopted by* 2020 WL 1166616 (Mar. 11,

2020); *D & A Bus Co.*, 270 F. Supp. 3d at 617.

For the reasons discussed below, I find that the requested hourly rate is unreasonably high. I respectfully recommend that Plaintiffs be awarded attorneys' fee for 20.9 hours of work at $400 per hour.

### (i)  Reasonable Hourly Rate

Plaintiffs' attorney Susan Bruno ("Ms. Bruno") seeks a "blended rate" of $500 per hour. (Stone Aff. ¶ 48). As an initial matter, the Second Circuit has not fully endorsed blended rates. *Trs. of the Rd. Carriers Local 707 Pension Fund v. J.R.S. Trucking Servs., Inc.*, No. 15-CV-2444 (CBA), 2015 WL 10487716, at *9 (E.D.N.Y. Nov. 10, 2015), *R & R adopted by* 2016 WL 1064518 (Mar. 15, 2016); *see Trs. of Local 1034 Pension Tr. Fund v. N. Cancro, Inc.*, No. 18-CV-7412 (CBA) (RML), 2019 WL 7580098, at *6 (E.D.N.Y. Dec. 18, 2019) (stating that district courts have awarded such rates on rare occasions), *R & R adopted by* 2020 WL 207902 (Jan. 14, 2020); *Cent. Fur Storage Co.*, 2019 WL 3937132, at *11 ("[U]se of a 'blended rate' is at odds with the 'presumptively reasonable fee' framework."). The requesting party must justify the requested rate by submitting affidavits identifying involved attorneys, their experiences and billing rates. *See Trs. of Local 813 Ins. Tr. Fund v. Pers. Touch Funeral Serv., Inc.*, No. 18-CV-6535 (NG) (VMS), 2019 WL 2295775, at *3 (E.D.N.Y. May 30, 2019).

Other than stating that the work was done by "Cary Kane and its co-counsel," Ms. Bruno has not provided any information on other attorneys who worked on the case. (Dkt. No. 13-13 ("Bruno Aff.") ¶¶ 8, 10). The billing slips exhibit only Ms. Bruno's name

---

[12] Tribeca = $202,437 X .20 = $40,487.40                Tompkins = $444,804 X .20 = $88,960.80

as the attorney completing the tasks, (Dkt. Nos. 13-11, 13-12 ("Exs. i-1, i-2")), and documents filed with the court or letters sent to Defendants do not have a name other than Ms. Bruno's, (*see* Pls.' Mot.). Therefore, I find that Plaintiffs have not submitted enough information regarding other attorneys involved in the case, their experiences, and usual billing rates to overcome the Second Circuit's disfavor of blended rates. The attorney's fee, therefore, must be analyzed as it applies personally to Ms. Bruno.

To determine whether the hourly rate is reasonable, the court should consult the generally used rate in the district where the court sits. *D & A Bus Co.*, 270 F. Supp. 3d at 617–18; *Arbor Hill*, 522 F.3d at 190. "Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners . . . ." *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship & Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, No. 17-CV-5072 (DRH) (AYS), 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018) (Pfeffer Arb.), *R & R adopted by* 2018 WL 2465351 (June 1, 2018); *Local 807 Labor-Mgmt. Health & Pension Funds v. Kone Corp.*, No. 18-CV-1478 (FB) (RML), 2018 WL 7575001, at *4 (E.D.N.Y. Nov. 26, 2018), *R & R adopted by* 2019 WL 1129431 (Mar. 12, 2019); *cf. Local 1922 Pension Fund v. Broadway Elec. Supply, Co.*, No. 19-CV-2344 (JS) (AKT), 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020) (recognizing that some courts in the district award $300 to $450 per hour for partners) , *R & R adopted* (Order dated 5/4/2020). "However, courts . . . have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range." *Seacoast Petrol.*, 97 F. Supp. 3d at 104.

The Court finds that Ms. Bruno's requested hourly rate is unreasonable. Ms. Bruno claims that her bill would have been higher than $500 if the request was not for a blended rate. (Bruno Aff. ¶ 10). To justify the requested rate, Ms. Bruno states that she was admitted to the New York bar in 1987 and has been litigating ERISA matters for more than twenty years. (*Id.* ¶¶ 11–13). However, $500 far exceeds what the District has awarded partners with a similar level of experience on similar cases. *See Gesualdi v. Dove Mason Supply Co., Inc.*, No. 19-CV-1181 (RRM) (PK), 2020 WL 1538746, at *6 (E.D.N.Y. Mar. 11, 2020) (awarding a partner with more than twenty years of experience $400 per hour), *R & R adopted by* 2020 WL 1536408 (Mar. 30, 2020); *Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773 (FB) (SJB), 2019 WL 1130729, at *8 (E.D.N.Y. Feb. 11, 2019) (awarding partners with sixteen and twenty-nine years of experience in employment labor law hourly rate of $400), *R & R adopted by* 2019 WL 1128356 (Mar. 12, 2019). Furthermore, Ms. Bruno has never been awarded more than $375/hour for similar cases. *See e.g.*, *Kone Corp.*, 2018 WL 7575001 at *4 (awarding Ms. Bruno $350 per hour); *see also Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on the Piers, LLC*, No. 18-CV-3642 (ARR), 2019 WL 440641, at *5 (E.D.N.Y. Jan. 14, 2019) (awarding Ms. Bruno $350 per hour rate instead of the requested $480 per hour), *R & R adopted by* 2019 WL 438476 (Feb. 4, 2019); *Trs. of the Local 138 Pension Fund v. Tax Trucking Co.,* No. 09-CV-3041 (RRM) (RML), 2015 WL 13446776, at *6 (E.D.N.Y. June 2, 2015) (awarding Ms. Bruno $375 per hour), *R & R adopted by* 2017 WL 2779685 (June 26, 2017).

Based on the generally awarded rate in the District for attorneys of similar experiences as Ms. Bruno on similar cases as this, I find that $400 per hour, rather than the requested $500 per hour, is a reasonable rate for Ms. Bruno's work.

(ii)     Reasonable Hours

Like hourly rates, the number of hours expended on each task must be reasonable. *Annuity & Health & Welfare Funds of United Food & Commercial Workers Local 2013 v. S. Orange Fancy Food, LLC*, No. 19-CV-4192 (ARR) (RER), 2020 WL 5260540, at *4 (E.D.N.Y. Aug. 14, 2020), *R & R adopted by* 2020 WL 5259005 (Sept. 3, 2020). The requesting party must establish the reasonableness by providing contemporaneous time records with specific job descriptions, hours expended, and the dates the jobs were performed. *Cent. Fur Storage Co.*, 2019 WL 3937132, at *12; *Seacoast Petrol.*, 97 F. Supp. 3d at 104. The court then makes an assessment on reasonableness depending on the nature of the case. *See Cent. Fur Storage Co.*, 2019 WL 3937132, at * 13; *Trs. of the Local 138 Pension Fund v. Tax Trucking Co.*, No. 09-CV-3041 (RRM) (RML), 2015 WL 13446776, at *7 (E.D.N.Y. June 2, 2015), *R & R adopted by* 2017 WL 2779685 (June 26, 2017). The number of hours expended is unreasonable if they contain "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 279 (E.D.N.Y. 2014) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

Ms. Bruno billed 20.9 hours for the case. (Stone Aff. ¶ 47; *see* Exs. i-1, i-2). She has submitted sufficient documentation of the tasks, hours expended on each task, and dates the tasks were performed. (Exs. i-1, i-2). "In a straightforward ERISA default judgment case, counsel typically expends no more than twenty-five total hours." *Gesualdi v. Andrews Trucking Corp.*, No. 09-CV-565 (SLT) (RML), 2010 WL 2301028, at *7 (E.D.N.Y. Mar. 22, 2010) *R & R adopted by* 2010 WL 2292392 (June 3, 2010). This Court

has previously found reasonable hours range from 24.95, *LaBarbera v. Cent. Design Sys., Inc.*, No. 06-CV-2709 (ARR) (RML), 2006 U.S. Dist. LEXIS 89100, at *12 (E.D.N.Y. Nov. 2, 2006), *R & R adopted by* 2006 WL 3422645 (Nov. 28, 2006), to 34.5 hours, *Tax Trucking Co.*, 2015 WL 13446776, at *7 (taking into account the "the amount of work performed and the length of the proceedings"). Upon careful review of the affidavits submitted by Ms. Bruno, I find no excessive, redundant, or otherwise unnecessary hours. (*See* Exs. i-1, i-2). Therefore, based on similar cases and the records submitted, the Court finds 20.9 hours to be reasonable.

I respectfully recommend that Ms. Bruno be awarded $400/hour X 20.9 hours = $8,360. The documents submitted by Plaintiffs' counsel show that nearly all tasks involved Defendants in tandem. (*Id.*). Although she spent 0.20 hours editing "Tompkins complaint," it can reasonably be interpreted to apply to both Defendants. (*See* Ex. i-1 at 2). Therefore, the Court is unable to determine how much time the attorney spent on each Defendant. I respectfully recommend holding each Defendant liable for fifty percent of attorney's fees. *See Daniello v. PML Furniture Grp. of NJ, Ltd.*, No. 06-CV-5261 (ENV) (RER), 2009 U.S. Dist. LEXIS 131676, at *17 (E.D.N.Y. May 6, 2009), *R & R adopted by* 2009 WL 4722650 (Dec. 9, 2009).

E.  Costs

Plaintiffs lastly request $400 in costs for this Court's filing fee. This amount is supported by Ms. Bruno's records, (Ex. i-1 at 2), and the Court's docket, (*see* Dkt. No. 1 ("filing fee $ 400, receipt number ANYEDC-12195312.")). This amount is reasonable and compensable. *See J.R.S. Trucking*, 2015 WL 10487716, at *10 (stating that filing fees and fees associated with service of process are

11

"plainly reasonable" (citation omitted)). As with attorney's fees, I respectfully recommend that each Defendant be liable for fifty percent of $400 for filing fees.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that default judgment be granted against Defendants and judgment for damages be entered as follows: From Tribeca: (1) $202,437 in delinquent contributions, (2) $18,219.33 in interest, (3) $40,487.40 in liquidated damages, (4) $4,180 in attorney's fees, and (5) $200 in costs; from Tompkins: (1) $444,804 in delinquent contributions, (2) $40,032.36 in interest, (3) $88,960.80 in liquidated damages, (4) $4,180 in attorney's fees, and (5) $200 in costs.

Plaintiffs' counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court promptly thereafter. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Dora Lizette Irizarry within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**RESPECTFULLY RECOMMENDED.**

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.

United States Magistrate Judge
Dated: December 21, 2020
Brooklyn, NY

12